## A90A1536. LAWRENCE v. THE STATE.
(401 SE2d 275)

McMURRAY, Presiding Judge.

Phillip Lawrence was convicted of two counts of armed robbery, from which he appeals.

The evidence presented at trial showed that at about 3:00 p.m. Oscar Barton's pawn shop was entered by two males. The first man was described as approximately six feet tall, weighing about 150 pounds, and brandishing a pistol which he aimed at Barton. The sec-

ond man was considerably larger than the first, and was unarmed. The first man took a large quantity of gold jewelry from the display cases and $120 from Barton, while the larger man grabbed Barton's wife from the front of the store, physically subdued her and took her to a back room where he tied her up. Two necklaces were also taken from Mrs. Barton's person and some money was stolen from her purse.

While the robbery was in progress, John Fagans II, a passenger in his father's car which was stopped for a traffic light, saw the larger man seize Mrs. Barton. He reported this to his father, who drove immediately to the Rossville Police Department just down the street to make a report. A dispatch was broadcast over the radio that there was a "fight" at the pawn shop, and the first to answer this call was Jamie Hood, a part-time, off-duty Rossville police officer, who arrived in his personal vehicle just as the larger man was walking back to the getaway car. Hood asked him if he had been in the pawn shop and seen any disturbance, to which he responded that he had observed no disturbance while in the pawn shop. The man agreed to talk to Officer Hood and sat there in his car chatting with Hood. When the other robber arrived at the car, the larger man struck Hood in the stomach, jumped back in the car and started it. When Officer Hood grabbed the door of the getaway car the smaller robber pulled a gun and Hood dropped to the ground as the two robbers drove away. Officer Carter of the Rossville Police Department reached the scene in time to see Officer Hood assaulted by the robbers and gave chase, but lost the getaway car.

That afternoon, Mr. and Mrs. Barton, Officers Hood and Carter looked at individual mug shots without identifying any suspect. A physical lineup of suspects, not including appellant, held later that evening, also produced no identifications. Two months later, the Rossville Police Department asked an expert in the LaFayette Police Department to prepare a photographic lineup. The lineup prepared consisted of six photographs, including pictures of appellant and another suspect named Demond Jackson. Neither Officer Carter nor Mrs. Barton could identify any of the photographs as the robbers. Mr. Barton and the Fagans identified both appellant and Jackson, and Officer Hood identified appellant as the man who struck him. Prior to trial at a hearing on appellant's motion to suppress this identification, Barton, Hood and the Fagans made in-court identifications of appellant. At trial, Mrs. Barton and Carter were still unable to identify appellant, but Barton, Hood and the Fagans again positively identified him as the larger robber.

Appellant testified that he was not present in Rossville on the day of the robbery and introduced in evidence a time card from his place of employment, which was located about an hour and 20 min-

utes to an hour and 45 minutes drive from Rossville, showing that he had clocked in at exactly 4:00 p.m. that day. His supervisor testified that there was no doubt in his mind that appellant had been present at the plant at 4:00 p.m. No physical evidence linking appellant to the crime was presented, as the police apparently never recovered the gun, nor any of the stolen jewelry, the getaway car, any fingerprints or the clothes the robbers were described as wearing, or obtained any statements from the suspects. *Held*:

1. Appellant contends that the photographic lineup was impermissibly suggestive based on the totality of the circumstances, resulting in his misidentification by the witnesses, and should not have been allowed in evidence. He complains that some of the backgrounds in the color photographs were different, that some of the subjects in the photographs had facial hair while his did not, and that some of the photographs contained height scales, which his did not. However, the witnesses who picked appellant's photograph stated that their identifications were based solely on their observation of him at the suppression hearing. "Accordingly, the trial court did not err in denying the motion to suppress the witness[es]' in-court testimony. 'Even if a pretrial identification is tainted, an in-court identification is not constitutionally inadmissible if it does not depend upon the prior identification but has an independent origin. (Cit.) Under the facts of this case we need only determine that the record supports the trial court's determination that the in-court identification was based on an independent origin rather than any irregularity in the pretrial identification procedures. (Cit.) As the record supports that determination, the in-court identification was admissible.' [Cits.]" *Zackery v. State*, 195 Ga. App. 870 (395 SE2d 71). See also *Payne v. State*, 233 Ga. 294, 297 (II) (210 SE2d 775); *Lynch v. State*, 158 Ga. App. 643 (281 SE2d 640).

2. For the same reasons, appellant's assertion that the trial court erred in denying his pretrial motion to order the witnesses to participate in a physical lineup is also without merit. "A line-up identification, or identification from a group of photographs, is not a prerequisite to every in-court identification. [Cits.] The test is whether the identification confrontation staged by the law enforcement authorities, judged by the 'totality of the circumstances surrounding it,' is 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to constitute a denial of due process of law. [Cits.] Stated conversely, a conviction based upon an in-court identification following a pre-trial identification will be set aside on that ground only if the pre-trial identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. [Cit.] . . . Even if the pre-trial identification is 'tainted,' the in-court identification is not constitutionally inadmissible if it does

not depend upon the prior identification but has an 'independent origin' [Cits.], such as where the witness discussed with defendant the possible sale of an automobile for about ten minutes before the automobile was stolen. [Cit.] Finally, the principle is clear . . . that undue suggestion does not arise merely from the fact that the authorities suspect and now accuse a certain individual. [Cit.]" *Moye v. State*, 122 Ga. App. 14, 16 (1), 17-18 (176 SE2d 180).

3. Appellant contends that the trial court erred in failing to grant his motion for directed verdict of acquittal on the count of armed robbery of Mrs. Barton. He argues that Mr. Barton owned the pawn shop, that Mrs. Barton did not have any interest in the shop, did not work there and was not in possession of any of the items taken other than her personal jewelry which was not included in the indictment; and that thus there was only one robbery. We do not agree. The indictment accuses the appellant of committing the offenses by taking the same jewelry and cash from the person and immediate presence of each of the Bartons, and there was testimony that the Bartons operated the shop together. " 'Robbery is a crime against possession, and is not affected by concepts of ownership.' [Cit.] That being so, the fact that the property may have been jointly owned does not preclude the appellant from being convicted of two counts of armed robbery. See, e.g., *Painter v. State*, 237 Ga. 30 (226 SE2d 578), where defendant, having robbed a husband and a wife, was convicted of two counts of armed robbery. The court did not err in denying appellant's motion for directed verdict." *Carter v. State*, 156 Ga. App. 633 (3), 634 (275 SE2d 716).

4. Appellant argues that the verdict was not supported by the evidence because his alibi defense, which was unrebutted by the State, showed that it was impossible for him to have been in Rossville at 3:10 p.m. and also be at work at exactly 4:00 p.m. The defense of alibi was fully and correctly charged to the jury. "However, the jury was 'not bound to accept the evidence introduced of alibi as true; the jury determines the credibility of the witnesses and weight to be given their testimony. OCGA § 24-9-80; [cit.]' [Cit.]" *Champion v. State*, 192 Ga. App. 43 (1) (383 SE2d 565). Accord *Argo v. State*, 192 Ga. App. 794 (1) (386 SE2d 545). We find no grounds for reversal.

*Judgment affirmed. Sognier, C. J., and Carley, J., concur.*

DECIDED JANUARY 8, 1991.

*William P. Slack*, for appellant.
*Ralph Van Pelt, Jr., District Attorney*, for appellee.